FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

ROBERT ADDIE, JORGE PEREZ and )
JASON TAYLOR,                 )
                              )
           Plaintiffs,        )
                              )          Civil No. 2004-135
       v.                     )
                              )
CHRISTIAN KJAER, HELLE        )
BUNDGAARD, STEEN BUNDGAARD,   )
JOHN KNUD FÜRST, KIM FÜRST,   )
NINA FÜRST, and KEVIN F.      )
D'AMOUR,                      )
                              )
           Defendants.        )
_____)

ATTORNEYS:

Gregory H. Hodges, Esq.
St. Thomas, U.S.V.I.
        *For the plaintiffs.*

Carol G. Hurst, Esq.
St. Thomas, U.S.V.I.
        *For defendants Christian Kjaer, Helle Bundgaard, Steen*
        *Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst.*

Gordon C. Rhea, Esq.
Mt. Pleasant, S.C.
        *For defendants Christian Kjaer, Helle Bundgaard, Steen*
        *Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst.*

Maria T. Hodge, Esq.
St. Thomas, U.S.V.I.
        *For defendant Kevin F. D'Amour.*

<u>**MEMORANDUM OPINION**</u>

GÓMEZ, C.J.

    Before the Court is the motion of defendant Kevin D'Amour

("D'Amour") for reconsideration of this Court's February 23,

2009, ruling on a motion for partial summary judgment.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 2

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The Court writes only for the parties, whose familiarity with these proceedings is presumed.

The plaintiffs, Robert Addie, Jorge Perez and Jason Taylor (together, the "Buyers"), agreed to purchase two parcels of land from defendants Christian Kjaer; Helle Bundegaard; Steen Bundegaard; John Knud Furst; Kim Furst; and Nina Furst (together, the "Sellers"): Great St. James Island, St. Thomas, U.S. Virgin Islands and Parcel No. 11 Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas, U.S. Virgin Islands. The Buyers also agreed to pay $1.5 million into an escrow account managed by Premier Title Company, Inc., formerly known as First American Title Company, Inc. ("Premier").[1] The escrow payments were made in two installments. The first installment was in the amount of $1 million. The second installment was in the amount of $500,000.

At all times relevant, D'Amour was Premier's president and sole shareholder. D'Amour also acted as counsel to the Sellers during the land transaction.

Neither parcel of land was conveyed as the parties contemplated. The Buyers demanded the return of the Escrow Money. The Escrow Money was not returned. This action ensued.

---

[1] Premier is a former defendant in this matter. The Buyers settled their claims against Premier. Premier has been dismissed.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 3

The Buyers allege the following: breach of contract; fraud by certain defendants; fraud by D'Amour; conversion; breach of fiduciary duty by Premier; and unjust enrichment.[2] The Buyers also seek a declaration that: they are entitled to terminate the land contracts; the Sellers cannot deliver marketable title to the land; and the Sellers have defaulted under the terms of the land contracts.

In August 2008, the Buyers sought summary judgment on their conversion claim against the Sellers, Premier and D'Amour. The Sellers opposed the motion and filed a cross-motion for summary judgment on that claim. Premier and D'Amour also opposed the Buyers' motion.

On February 23, 2009, the Court denied the Buyers' motion with respect to the Sellers and granted the Sellers' cross-motion. With respect to D'Amour, the Court denied the motion with respect to $1 million of the Buyers' escrow money but granted the motion with respect to $500,000 of that money. The Court entered judgment against D'Amour in the amount of $500,000. Because Premier had reached a settlement with the Buyers after the Buyers' motion was filed, the Court did not address the motion as it pertained to Premier. *See Addie v. Kjaer*, Civ. No. 2004-135, 2009 U.S. Dist. LEXIS 15206 (D.V.I. Feb. 23, 2009) (the

---

[2] The Buyers also alleged negligent misrepresentation by the Sellers. That claim has been dismissed.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 4

"Conversion Ruling").  D'Amour now seeks reconsideration of the

Conversion Ruling.  The Buyers have filed an opposition.

## II. <u>DISCUSSION</u>

Motions for reconsideration are governed by Local Rule of

Civil Procedure 7.3, which provides:

> A party may file a motion asking the Court to
> reconsider its order or decision.  Such motion shall be
> filed within ten (10) days after the entry of the order
> or decision unless the time is extended by the Court.
> Extensions will only be granted for good cause shown.
> A motion to reconsider shall be based on:
>
>> 1. intervening change in controlling law;
>> 2. availability of new evidence, or;
>> 3. the need to correct clear error or prevent
>> manifest injustice.

LRCi 7.3 (2008); *see also Max's Seafood Café by Lou-Ann, Inc. v.*

*Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River*

*Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.

1995)).  The purpose of a motion for reconsideration "is to

correct manifest errors of law or fact or to present newly

discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,

909 (3d Cir. 1985).  Such motions are not substitutes for

appeals, and are not to be used as "a vehicle for registering

disagreement with the court's initial decision, for rearguing

matters already addressed by the court, or for raising arguments

that could have been raised before but were not." *Bostic v. AT&T*

*of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004).  "Local Rule

[7.3] affirms the common understanding that reconsideration is an

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 5

'extraordinary' remedy not to be sought reflexively or used as a substitute for appeal." *Id.*

### III. <u>ANALYSIS</u>

D'Amour raises three main challenges to the Conversion Ruling.  Each of those challenges asserts that the Court's ruling is clearly erroneous or results in manifest injustice.  The Court will address each challenge in turn.

### A.    Reliance on the Participation Theory

First, D'Amour argues that the Court erred when it concluded that he could be held personally liable for conversion.

In ruling on the Buyers' motion for summary judgment with respect to D'Amour, the Court addressed D'Amour's argument that his "ownership of [Premier] d[oes] not render him personally responsible for [Premier's] actions." (Def. D'Amour's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Conversion Cl. at 13 n.15.) That argument was asserted in a footnote and was untethered to any legal authority whatever.  In rejecting that argument, the Court reasoned that D'Amour could be held personally liable for conversion of the Buyers' money on the basis of his personal participation in that conversion.

The legal theory undergirding the Court's reasoning goes by various names across jurisdictions.  In some jurisdictions, it has been termed the "participation theory."  That theory "imposes personal liability on corporate officers or shareholders where

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 6

they have personally taken part in the actions of the corporation." *First Realvest, Inc. v. Avery Builders, Inc.*, 600 A.2d 601, 603 (Pa. Super. Ct. 1991) (citing *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89-90 (Pa. 1983)).  The Court noted that the participation theory is recognized by courts in other jurisdictions, including by courts in the Third Circuit.

D'Amour argues that the Court's reliance on the participation theory was misplaced.  According to D'Amour, that theory neither is recognized by Virgin Islands law nor represents the majority rule in American jurisprudence. *See Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 498-99 (V.I. 2008) (noting the Third Circuit's conclusion that "the Virgin Islands legislature intends [majority] rule to govern in the absence of specific legislation") (alteration in original; citations omitted).  Both prongs of that argument are deficient.

Virgin Islands law is mum on the issue of a corporate agent's personal liability for the commission of a tort.  Thus, in the Conversion Ruling, although not stated explicitly, the Court looked to the Restatement for applicable law.[3]  The

---

[3]  *See* V.I. CODE ANN tit. 1, § 4 ("The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.").

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 7

Restatement (Third) of Agency provides that

> [a]n agent is subject to liability to a third party
> harmed by the agent's tortious conduct.  Unless an
> applicable statute provides otherwise, an actor remains
> subject to liability although the actor acts as an
> agent or an employee, with actual or apparent
> authority, or within the scope of employment.

Restatement (Third) of Agency § 7.01 (2006).[4]  The comments to

that section of the Restatement explain that

> [h]olding a position as an officer or director of a
> corporation or other organization does not insulate a
> person from liability for the person's own tortious
> conduct.  *Thus, an organizational officer is subject to
> liability when the officer directly participates in
> conduct that constitutes a tort* . . . .

*Id.* § 7.01 cmt. d (emphasis supplied).[5]

---

[4]  The Restatement (Second) of Agency similarly provides
that "[a]n agent who does an act otherwise a tort is not relieved
from liability by the fact that he acted at the command of the
principal or on account of the principal . . . ." Restatement
(Second) of Agency § 343 (1958).

[5]  The Restatement's illustrations are useful in assessing
the Buyers' conversion claim against D'Amour:

> A is the sole proprietor of a delivery firm doing
> business as "Ace Trucking."  A has incorporated A's
> firm as "Ace Trucking, Inc." and transferred ownership
> of [a truck used in Ace Trucking's business] to it. A
> is the sole shareholder, officer, and director of Ace
> Trucking, Inc.  A is subject to liability to T.  Ace
> Trucking, Inc., is also subject to liability to T.

> . . . .

> A is the Chief Financial Officer of P Corporation,
> engaged in the manufacture of bulk pharmaceuticals.  To
> finance an acquisition, P Corporation enters into a
> loan agreement with T Bank that requires P Corporation
> to place all payments from its customers into a special

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 8

The Restatement clearly articulates the very theory that D'Amour claims does not exist in Virgin Islands law: a corporate agent may be personally liable in tort if, although acting on behalf of a corporate entity, he directs or participates in the tortious act.   In light of Virgin Islands law's silence on this point[6], the Restatement's position is the law of the Virgin

---

> "blocked" bank account to be held in trust for T Bank. Instead, A diverts payments received from P Corporation's customers into other bank accounts for P Corporation's general use.  Under applicable law, A's diversion of the payments constitutes conversion of T Bank's property.  *A is subject to liability to T for the conversion*, although A did not derive a direct personal benefit from the converted funds.

Restatement (Third) of Agency § 7.01 cmt. b, illus. 2, 5 (emphasis supplied).

[6]  In a footnote, D'Amour intimates that Virgin Islands law may contain a provision that runs counter to the Restatement.  He relies on Title 13, Section 344(b) of the Virgin Islands Code, which provides:

> No suit shall be brought against any officer, director or stockholder for any debt or liability of a corporation, of which he is an officer, director or stockholder, until judgment be obtained therefor against the corporation, nor after three years from the date of such judgment and any such officer, director or stockholder may set up any defense which the corporation might have asserted against such debt or liability.

V.I. Code Ann. tit. 13, § 344(b).

The above provision simply codifies the corporate shield that exists in practically every state's corporate laws.  In no way, however, does it categorically exempt a corporate agent from personal tort liability arising out of acts committed on the corporation's behalf.  Delaware law, for example, contains a

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 9

Islands.  D'Amour's suggestion that the Court failed to apply the proper legal standard is consequently unavailing.

Furthermore, because the Restatement provides a rule that governs the scenario presented here, canvassing other jurisdictions for the majority rule, as D'Amour urges, is unnecessary.  Such an exercise establishes, in any event, that the position of the Restatement is fully in harmony with the law of most other jurisdictions. *See*, *e.g.*, *Terr. of the U.S.V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 794 n.153 (Del. Ch. 2007) ("Officers and directors may be held individually liable for personal participation in tortious acts even though performed solely for the benefit of the corporation[.]") (quotation omitted); *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 41

_____

nearly identical provision:

> No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which such person is an officer, director or stockholder, until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied.

DEL. CODE ANN. tit. 8, § 325(b).  Delaware courts have not treated that provision as a bar to the application of the participation theory. *See*, *e.g.*, *Amaysing Techs. Corp. v. CyberAir Communs.*, No. 19890, 2005 Del. Ch. LEXIS 35, at *21 (Del. Ch. Mar. 3, 2005) (noting that "officers and directors may be found personally liable for their tortious actions"); *St. James Rec., LLC v. Rieger Opportunity Ptnrs, LLC*, No. 19346, 2003 Del. Ch. LEXIS 126, at *21 (Del. Ch. Nov. 5, 2003) ("The default common-law rule is that corporate officials may be held individually liable for their tortious conduct, even if undertaken while acting in their official capacity.") (footnoted omitted).

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 10

(Utah 2003); *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002);

*Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 273 (N.J. 2002);

*Haupt v. Miller*, 514 N.W.2d 905, 909 (Iowa 1994); *Camacho v. 1440*

*Rhode Island Ave. Corp.*, 620 A.2d 242, 246-47 (D.C. 1993); *Weir*

*v. McGill*, 417 S.E.2d 57, 59 (Ga. 1992); *Hecker v. Ravenna Bank*,

468 N.W.2d 88, 95 (Neb. 1991); *Ingram v. Machel & Jr. Auto*

*Repair, Inc.*, 148 A.D.2d 324, 325 (N.Y. App. Div. 1989);

*Mississippi Printing Co. v. Maris, West & Baker, Inc.*, 492 So. 2d

977, 978 (Miss. 1986); *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 52

(Cal. 1979); *Jabczenski v. Southern Pac. Memorial Hosp.*, 579 P.2d

53, 57 (Ariz. Ct. App. 1978); *Taylor v. Alston*, 447 P.2d 523, 525

(N.M. Ct. App. 1968); *New Eng. Box Co. v. Gilbert*, 123 A.2d 833,

835 (N.H. 1956).  This long line of authority leaves little, if

any, room for doubt that the Conversion Ruling correctly

interprets the majority rule.[7]

Accordingly, the Court sees no reason to disturb the

Conversion Ruling based on D'Amour's argument that the Court

---

[7] The Court has come across no jurisdiction that applies a contrary rule.  It is telling that D'Amour has elected to point the Court to nary a jurisdiction whose law supports his view. Indeed, in his motion for reconsideration, D'Amour concedes that "[t]he participation theory is popular in New Jersey and Pennsylvania, and has been used in a few instances in Delaware, Florida, Illinois, Iowa, Oregon, Virginia, South Carolina and Texas." (Def. D'Amour's Mem. in Support of Mot. for Recons. of Conversion Ruling 5) (quotation marks and footnote omitted).

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 11

improperly relied on the participation theory.[8]

## B.   Application of the Participation Theory

D'Amour also maintains that the Court incorrectly applied the participation theory by "bifurcat[ing] the alleged tort of conversion of Premier . . . from the alleged tort of conversion of . . . D'Amour, in the single count of the complaint alleging that claim against both." (Def. D'Amour's Mem. in Support of Mot. for Recons. of Conversion Ruling 6-7) (footnote omitted).  His argument in this vein is manifold.

According to D'Amour, because the Court found that the gist-of-the-action doctrine precludes the Buyers' conversion claim with respect to Premier and the Sellers, the Court should reach that same conclusion with respect to D'Amour.  That approach is misguided.

D'Amour's contention that the Court applied the gist-of-the-action doctrine to Premier is inaccurate.  After the Buyers moved for partial summary judgment, but before the Court ruled on the motion, the Buyers and Premier advised the Court that they had

---

[8]  D'Amour's argument that the Court committed clear error by not explicitly engaging in an analysis of the Restatement after determining that Virgin Islands law had nothing to say on the matter, likewise does not militate in favor of reconsideration.  That argument essentially attacks the explicitness of the Court's reasoning in the Conversion Ruling, not the soundness of the Court's conclusion.  To the extent D'Amour's argument in this regard falls short of exposing clear error in that conclusion, reconsideration is unwarranted.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 12

reached a settlement.  As a consequence, in the Conversion Ruling, the Court did not address the Buyers' motion as it pertained to Premier.  Indeed, the Court found that the gist-of-the-action doctrine barred the Buyers' conversion claim with respect to only the Sellers.  In recasting the Conversion Ruling in his own terms, D'Amour essentially asks for an advisory opinion about what the Court's ruling might have been with respect to Premier on this point.  The Court must decline that invitation. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court [does not have] the power to render advisory opinions . . . .") (quotation omitted).

D'Amour's second argument is really an extension of the first.  D'Amour posits that a corporate agent may be personally liable in tort under the participation theory only if the corporation itself is found liable for the same tort.  In his view, because the Court would have found the Buyers' conversion claim against Premier barred by the gist-of-the-action doctrine, Premier could not have incurred conversion liability.  Thus, according to D'Amour, he could not have incurred conversion liability.  D'Amour submits not a single authority for his apparent proposition that the individual tort liability of a corporate agent is necessarily derivative of the tort liability of the corporate entity.  That proposition is refuted by the Restatement.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 13

Under the Restatement, "[a]n agent whose conduct is tortious is subject to liability . . . whether or not the agent acted with actual authority, with apparent authority, or within the scope of employment." Restatement (Third) of Agency 7.01 cmt. b (2006). The Restatement explains that "[t]he justification for this basic rule is that a person is responsible for the legal consequences of torts committed by that person." *Id.* Furthermore, "[a] tort committed by an agent constitutes a wrong to the tort's victim *independently of the capacity in which the agent committed the tort. Id.* (emphasis supplied). The Restatement illustrates these principles in a scenario that is readily overlaid onto the facts of this case:

> A is the Chief Financial Officer of P Corporation, engaged in the manufacture of bulk pharmaceuticals. To finance an acquisition, P Corporation enters into a loan agreement with T Bank that requires P Corporation to place all payments from its customers into a special "blocked" bank account to be held in trust for T Bank. Instead, A diverts payments received from P Corporation's customers into other bank accounts for P Corporation's general use. Under applicable law, A's diversion of the payments constitutes conversion of T Bank's property. A is subject to liability to T for the conversion, although A did not derive a direct personal benefit from the converted funds.

Restatement (Third) of Agency 7.01 cmt. b, illus. 5.

The Restatement's illustration unambiguously demonstrates that a corporate agent may be held liable for a tort he personally commits in violation of his principal's contract with the plaintiff. The Restatement does not bar such a tort claim

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 14

merely because the agent's tort runs afoul of contractual duties the principal owes the plaintiff.

The law in other jurisdictions similarly does not support D'Amour's understanding. *See*, *e.g.*, *CentiMark Corp. v. Pegnato & Pegnato Roof Mgmt.*, Civ. No. 05-708, 2008 U.S. Dist. LEXIS 37057 (W.D. Pa. May 6, 2008) (holding that the owner of a company could be individually liable for conversion to a third party even where the company had a contract with the third party); *Levert v. Phila. Int'l Records*, Civ. No. 04-1489, 2005 U.S. Dist. LEXIS 20309 (E.D. Pa. Sept. 14, 2005) (permitting a conversion claim to proceed against an employee of a corporation that had a contract with the plaintiffs where the employee had personally directed the withholding of royalties belonging to them); *Loeffler v. McShane*, 539 A.2d 876, 878-79 (Pa. Super. Ct. 1988) (affirming the trial court's judgment that the owner of a title insurance company was liable for conversion of the plaintiffs' money because he "specifically directed the particular act to be done which resulted in the" conversion and because "even if the plaintiff has entered into a contractual relationship with the corporation, the corporate officer is not insulated from liability"); *National Acceptance Co. v. Pintura Corp.*, 418 N.E.2d 1114, 1117 (Ill. App. Ct. 1981) (affirming a conversion judgment against the president and sole shareholder of a construction company on the ground that "a corporate officer's individual

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 15

liability for conversion committed by him personally in behalf of
the corporation is established in the same manner as his
liability for any other tort; by proof of active participation in
the conversion[,]" and that "[a]lthough a corporate officer is
not generally liable for breach of contract, his status does not
shield him from liability for tortious acts from which the breach
proximately resulted").

Both the Restatement and the cases discussed above make
clear that a corporate agent may be personally liable for his own
tort even where the corporation itself is not liable for that
tort or where the corporation has entered into a contract with
the plaintiff.  That position makes sense.  It is consistent with
the general rule that a corporation is a separate legal person
distinct from its agents and employees. *See Carr v. Wainwright*,
43 F.2d 507, 509 (3d Cir. 1930); *Virgin Islands Territorial Board
of Realtors v. Wheatley*, 6 V.I. 185, 193 (D.V.I. 1965).  It also
has the salutary effect of ensuring that an individual who, as
the owner of a corporation, commits an act on its behalf in
contravention of its agreement with a plaintiff, cannot escape
personal liability by taking cover behind the corporate shield.
*See* Restatement (Third) of Agency 7.01 cmt. b (noting that the
rule holding an agent liable in tort "is consistent with
*encouraging responsible conduct* by individuals to impose
individual liability on an agent for the agent's torts although

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 16

the agent's conduct may also subject the principal to liability")
(emphasis supplied).  That salutary effect is especially
necessary where, as here, the corporate entity is a sole
proprietorship.

Indeed, D'Amour's view, were it adopted, would lead to a
particularly anomalous result.  No one could seriously contend
that the Buyers are entitled to sue D'Amour for breaching the
escrow agreement between the Buyers and Premier, as D'Amour
himself is not a party to that agreement. *See* Restatement (Third)
of Agency § 6.01 ("When an agent acting with actual or apparent
authority makes a contract on behalf of a disclosed principal,
(1) the principal and the third party are parties to the
contract; and (2) *the agent is not a party to the contract* unless
the agent and third party agree otherwise.") (emphasis supplied);
*see also Tayar v. Camelback Ski Corp.*, 957 A.2d 281, 289 (Pa.
Super. Ct. 2008) (en banc) ("When a corporation enters into a
contract, it does so only on behalf of its separate, fictional
capacity[.]").  Yet, despite his immunity from a breach of action
claim by the Buyers, D'Amour essentially also claims immunity
from any tort liability.  For the reasons discussed above, there
is no support in the law for such an arrangement.[9]

_____

    [9]  D'Amour also indicates in passing that the judgment
against him cannot stand because he did not personally benefit
from the conversion of the Buyers' money.  D'Amour cites no
authority to substantiate his position that one who converts
another's property must keep the property for himself for

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 17

The case law on which D'Amour relies does him no good.  He quotes liberally, for instance, from *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384 (3d Cir. 2004).  In that case, Stuart A. Williams and WSC Investments, LLC sued Hilton Group, plc and Ladbrokes International Betting and Gaming, a division of Hilton, asserting a breach of contract claim arising out of Williams' efforts to buy some of Ladbrokes' gaming assets.  The plaintiffs later amended their complaint, asserting  fraudulent and

_____

liability to attach.  That position is unsupported by law.

The Restatement defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965).  One type of conversion arises where an agent "makes an unauthorized delivery of a chattel[.]" *Id.* at § 234.  That type of conversion is precisely the type the Buyers allege against D'Amour. Importantly, by its definition, that type of conversion presumes that the agent has not personally benefited from another's property because he has given it to a third party.  Furthermore, when an agent is held liable for a tort committed on behalf of a principal, "[i]t is . . . immaterial to [the] agent's tort liability to a third party whether the agent benefited personally from the tortious conduct." Restatement (Third) of Agency 7.01 cmt. b; *see also National Acceptance Co. v. Pintura Corp.*, 418 N.E.2d 1114, 1117 (Ill. App. Ct. 1981) ("[L]iability for conversion . . . does not require proof that the converter has thereby personally benefited, since the essence of conversion is not acquisition of property by the wrongdoer, but deprivation of the owner.") (internal citation omitted); *see also, e.g., Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp.*, 647 A.2d 852, 860-61 (N.J. Super. Ct. App. Div. 1994) (holding a corporate officer personally liable for conversion where, although he received no personal benefit, he diverted payments from the plaintiff corporation's customers to his own corporation in violation of an agreement between the two corporations); *DCA Architects v. Am. Bldg. Consultants*, 417 S.E.2d 386, 380-89 (Ga. Ct. App. 1992) (similar).

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 18

negligent misrepresentation claims against both Hilton and Alan

Ross, Ladbrokes' managing director.  The district court

subsequently granted summary judgment for the defendants on the

plaintiffs' tort claims based on the gist-of-the-action doctrine.

The plaintiffs appealed.

In an unpublished decision, a divided panel of the Third

Circuit affirmed.  After reviewing the Pennsylvania Superior

Court's application of the gist-of-the-action doctrine, the Third

Circuit concluded, in pertinent part, that summary judgment was

appropriate with respect to Ross.  The court explained:

> Although Williams did not have a contractual
> relationship with Ross, Williams cannot detach Ross
> from his status as an agent for Ladbrokes.  Ross served
> as the principal negotiator for Ladbrokes.  As the
> Pennsylvania courts have spelled out, the gist of the
> action doctrine bars tort claims against an individual
> defendant where the contract between the plaintiff and
> the officer's company created the duties that the
> individual allegedly breached.

Williams, 93 Fed. Appx. at 387.[10]

---

[10]  In his dissent, Judge Becker "disagree[d] with what I see
as a crabbed view of Pennsylvania's willingness to apply tort
principles where the facts show that a party to an alleged
contract had a fraudulent intent with respect to its contractual
promises." *Williams*, 93 Fed. Appx. at 388 (Becker, J.,
dissenting).  In light of the record's demonstration that "[t]he
faithless Ross was a master duper" who had engaged in "an
egregious fraud, papered over by a contract[,]" *id.* at 390-91
(Becker, J., dissenting), Judge Becker concluded that this was "a
case in which the parties' obligations are defined . . . by the
larger social policies embodied in the law of torts." *Id.* 391
(Becker, J., dissenting) (quotation marks and citation omitted).

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 19

The problem with D'Amour's reliance on *Williams* is, first, that the reasoning in that case is rooted exclusively in Pennsylvania law.  D'Amour seems to think that this Court's adoption of the gist-of-the-action doctrine necessarily entails the wholesale incorporation of related Pennsylvania law.  He is incorrect.  The gist-of-the-action doctrine, as applied under certain circumstances in this jurisdiction, must still be squared with Virgin Islands law.  Under the Restatement, which is the law of the Virgin Islands in this context, a corporate agent's personal participation renders him personally liable in tort irrespective of the existence of a contract between his principal and a plaintiff.  Indeed, the majority in *Williams* nowhere mentions a corporate agent's personal liability in just such a scenario under either the Restatement or well-established law in both Pennsylvania and other jurisdictions.

Second, even assuming *arguendo* that *Williams* stands for the proposition that D'Amour urges, D'Amour misunderstands the nature of his liability.  His liability is not predicated solely on the contractual duties Premier owed the Buyers.  Rather, his liability springs as well from his extra-contractual, independent obligation not to cause the Buyers harm.  That obligation exists not only by virtue of the agreement between Premier and the Buyers, but because "the law imposes special duties on parties who deal with one another in a business setting." *Loeffler*, 539

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 20

A.2d at 879; *see also*, *e.g.*, *Airlines Reporting Corp. v. Inter Transit Travel*, 884 F. Supp. 83 (E.D.N.Y. 1995) (holding both a corporation and its owner liable for conversion of the plaintiff's money despite an agreement between the corporation and the plaintiff governing the handling of that money, where the owner was personally involved in the acts constituting conversion).  As such, D'Amour's reliance on *Williams* is misplaced.[11]

---

[11]  D'Amour's reliance on *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596 (E.D. Pa. 2008), is likewise unavailing.  In that case, Rosemary Krajewski financed the purchase of a car pursuant to a contract with American Honda Finance Corporation ("AHFC").  After Krajewski allegedly defaulted under one of the contract's terms, AHFC requested that Richard & Associates ("R&A") repossess the car.  Once the car was repossessed, Krajewski sued AHFC and R&A, alleging breach of contract and conversion, among other things.  The district court granted summary judgment for AHFC based on the gist-of-the-action doctrine, reasoning that "[t]he success of the conversion claim . . . depends on the construction of the" contract between Krajewski and AHFC. *Id.* at 607.  The court also granted summary judgment for R&A on the conversion claim.  While acknowledging the absence of a contractual relationship between Krajewski and R&A, the court also noted that R&A had acted as an agent of AHFC when it repossessed the car.  The court explained that under Pennsylvania law "[t]he gist of the action doctrine may bar tort claims brought against an agent of the entity with which the plaintiff has a contractual relationship." *Id.* at 619.  Based on that principle, the court concluded that Krajewski's conversion claim against R&A was "inextricably intertwined" with the breach of contract claim asserted against AHFC.

*Krajewski* does not serve D'Amour's cause for at least two reasons.  First, that case, like *Williams*, does not discuss the applicable Restatement provisions that govern the matter before this Court.  It also does not discuss Pennsylvania's widely accepted participation theory.  Second, *Krajewski* is factually distinguishable in that R&A is not an individual who personally participated in the torts of the organization for which he works.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 21

D'Amour also seeks support for his position in the

Restatement (Second) of Torts § 7.02, which provides:

> An agent's breach of a duty owed to the principal is
> not an independent basis for the agent's tort liability
> to a third party.  An agent is subject to tort
> liability to a third party harmed by the agent's
> conduct only when the agent's conduct breaches a duty
> that the agent owes to the third party.

Restatement (Second) of Torts § 7.02 (2006).

§ 7.02 addresses only those situations in which "conduct by

an agent that *breaches a duty owed to the agent's principal* also

constitutes a tort against a third party." *Id.* § 7.02 cmt. a

(emphasis supplied); *see also Antonio v. Wal-Mart*, No. 07-0006,

2007 U.S. Dist. LEXIS 61166, at *14 (S.D. Ind. Aug. 20, 2007)

("Under general principles of agency, an agent's breach of a duty

to the principal is not itself a basis for holding the agent

liable in tort to a third party.  The agent's conduct must breach

a duty that the agent owes to the third party.") (internal

citation omitted); 3 Am. Jur. 2d Agency § 298 (2002) ("[A]n

agent's tort liability is not based upon the contractual

relationship between the principal and agent, but upon the

common-law obligation that every person must so act or use that

which he or she controls as not to injure another.") (footnote

omitted).

D'Amour misreads § 7.02.  No party in this matter has

---

It is clear under the facts of *Krajewski* that the participation
theory was inapposite.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 22

claimed, nor has the Court suggested, that D'Amour breached a

duty to Premier.  For the reasons already discussed, D'Amour's

liability to the Buyers is not a function of his breach of such a

duty.  D'Amour's reliance on § 7.02 is thus misplaced.

**C.    The Award of $500,000**

D'Amour argues that the imposition of a $500,000 judgment

against him should be reconsidered.  His argument on this point

is difficult to fathom:

> [T]he issue of damages having been severed, there is no
> basis for the court to now determine that the
> plaintiffs suffered any actual damages from the release
> of the second deposit to the sellers. . . . Put another
> way, if the buyers breached their contract of purchase,
> they suffered no damages from the premature release of
> the second deposit, because they would not have been
> entitled to return of that deposit under the contracts.

(Def. D'Amour's Mem. in Support of Mot. for Recons. of Conversion

Ruling 9.)  D'Amour misunderstands the measure of damages for the

conversion of money.

It is well-settled that when the object of a conversion is

money, the damages owed to the plaintiff are the amount of money

converted plus prejudgment interest. *See Chase Manhattan Bank,*

*N.A. v. Power Prods.*, 27 V.I. 126, 128-30 (V.I. Terr. Ct. 1992);

*see also Connelly Mgmt. v. McNicoll*, Civ. No. 02-2440, 2006 U.S.

Dist. LEXIS 97580, at *219 (D.S.C. Mar. 21, 2006) ("The measure

of damages for money which has been converted is its amount with

legal interest from the date of conversion."); *In re Wholesale*

*Furniture Mart, Inc.*, 24 B.R. 240, 244 n.8 (Bankr. W.D. Mo. 1982)

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 23

("The measure of damages is the amount of money converted. Further, in order to give the injured party full indemnity, interest may be allowed from the date of conversion."); *Rowe v. Rowe*, 887 S.W.2d 191, 199 (Tex. Ct. App. 1994) ("[T]he correct measure of damages is that for conversion or wrongful detention of money -- the amount of money detained or converted, plus interest.").

Here, the Court found that D'Amour converted $500,000 of the Buyers' money.  The measure of damages for such a conversion is the amount of money converted, plus interest.  No further computation of damages need be undertaken under these circumstances.

D'Amour also claims that one of the elements of conversion -- the right to immediate possession -- pivots on the outcome of the parties' breach of contract claim.  Strangely, he refers not to a breach of contract claim between the Buyers and Premier or the Buyers and himself, but rather the breach of contract claim between the Buyers and the Sellers.  In plain terms, D'Amour suggests that the Court prematurely concluded that the Buyers are entitled to immediate possession of their escrow money before a determination has been made about whether the Buyers or the Sellers breached their contract.

In the Conversion Ruling, the Court found that the following material facts were undisputed: the Buyers wired $1.5 million in

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 24

escrow funds into the account of Premier, the escrow agent; the
escrow agreement authorized Premier to release those funds after
receiving written notice of satisfaction from the Buyers; Premier
did not receive such a notice for at least $500,000 of those
funds; and notwithstanding the absence of such a notice, Premier,
through D'Amour, released all of the escrow funds to the Sellers.

The defect in D'Amour's approach is that D'Amour's liability
for converting the Buyers' money is not dependent on the dispute
between the Buyers and the Sellers.  Rather, D'Amour's conversion
liability is predicated both on Premier's noncompliance -- as
directed by D'Amour personally -- with the escrow agreement
between the Buyers and Premier, as well as D'Amour's independent
obligation to the Buyers not to misdirect their money.  Whether
the Buyers breached their contract with the Sellers by failing to
obtain sufficient financing, or otherwise, is immaterial to
D'Amour's tort liability.  D'Amour's liability rests on whether
he personally acted in violation of the escrow agreement between
the Buyers and Premier and personally released the Buyers' money
without their permission.  Because it is undisputed that D'Amour
did violate that agreement and did not have permission to release
the Buyers' money, at least with respect to the $500,000
installment, the Court entered judgment against him in that
amount.  D'Amour articulates no compelling reason to disturb that
judgment.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion
Page 25

## IV. <u>CONCLUSION</u>

For the reasons given above, D'Amour's motion for reconsideration will be denied.  An appropriate order follows.

S\_____
   **CURTIS V. GÓMEZ**
    **Chief Judge**