DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

```
ROBERT ADDIE, JORGE PEREZ and )
JASON TAYLOR,                  )
                              )
            Plaintiffs,       )
                              )        Civil No. 2004-135
        v.                    )
                              )
CHRISTIAN KJAER, HELLE        )
BUNDGAARD, STEEN BUNDGAARD,   )
JOHN KNUD FÜRST, KIM FÜRST,   )
NINA FÜRST, and KEVIN F.      )
D'AMOUR,                      )
                              )
            Defendants.       )
_____)
```

ATTORNEYS:

**Gregory H. Hodges, Esq.**
St. Thomas, U.S.V.I.
        *For the plaintiffs.*

**Carol G. Hurst, Esq.**
St. Thomas, U.S.V.I.
        *For defendants Christian Kjaer, Helle Bundgaard, Steen*
        *Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst.*

**Maria T. Hodge, Esq.**
St. Thomas, U.S.V.I.
        *For defendant Kevin F. D'Amour.*

### MEMORANDUM OPINION & ORDER

**GÓMEZ, C.J.**

Before the Court is the motion of Christian Kjaer, Helle Bundgaard, Steen Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst (collectively the "Sellers"), for judgment as a matter of law and an amended judgment against plaintiff Jason Taylor ("Taylor"). In the alternative, the Sellers seek an amended

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 2

judgment.  Also before the Court is the Sellers' motion for

judgment as a matter of law in their favor on Taylor's breach of

contract claim against them.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because the Court writes primarily for the parties, whose

familiarity with these proceedings is presumed, only the

essential facts will be outlined.

Robert Addie, Jorge Perez and Jason Taylor (collectively the

"Buyers"), agreed to purchase two parcels of land from the

Sellers: Great St. James Island, St. Thomas, U.S. Virgin Islands

and Parcel No. 11 Estate Nazareth, No. 1 Red Hook Quarter, St.

Thomas, U.S. Virgin Islands. The Buyers entered into two

contracts of sale with Sellers ("Contracts of Sale") one for the

purchase of the Great St. James Property and the other for the

purchase of the Estate Nazareth property.  The Buyers entered

into an escrow agreement ("Escrow Agreement") wherein they agreed

to pay $1.5 million into an escrow account managed by Premier

Title Company, Inc., formerly known as First American Title

Company, Inc. ("Premier").  At all times relevant, defendant

Kevin D'Amour ("D'Amour") was Premier's president and sole

shareholder.  D'Amour also acted as counsel to the Sellers.

Neither parcel of land was conveyed as the parties

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 3

contemplated.   The Buyers demanded the return of the escrow

money.   The escrow money was not returned.   This action ensued.

The Buyers alleged the following: breach of contract; fraud

by certain defendants; fraud by D'Amour; conversion; breach of

fiduciary duty by Premier; and unjust enrichment.   The Buyers

also sought a declaration that: they are entitled to terminate

the land contracts; the Sellers cannot deliver marketable title

to the land; and the Sellers have defaulted under the terms of

the land contracts. The Sellers asserted two counterclaims, one

for fraudulent misrepresentation and another for breach of

contract against the Buyers.

This matter was tried to a jury from June 22,

2009 to July 2, 2009.   Following deliberations, the jury found

the Sellers liable on the Buyers' breach of contract and unjust

enrichment claims. The jury also found Addie and Perez liable for

breach of contract and fraud. The jury did not find Taylor liable

for either of those claims. The jury found the Sellers liable on

the Buyers' breach of contract claim against them.   The Sellers

now argue that they are entitled to judgment as a matter of law

pursuant to Federal Rule of Civil Procedure 50 ("Rule 50") on

their contract and fraud claims against Taylor.   They also seeks

relief pursuant to Rule 50 on Taylor's breach of contract claim

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 4

against them.  Additionally, they move for a new trial or amended judgment pursuant to Federal Rule of Civil Procedure 59 ("Rule 59").

## II. <u>DISCUSSION</u>

### A. Rule 50

Pursuant to Rule 50 a party may move for judgment as a matter of law where it "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000).  In evaluating whether there was adequate evidence presented to support the jury verdict, the court must give the non-movant, "as verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991).  Judgment as a matter of law under Rule 50 "should only be granted if 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Raiczyk v. Ocean County Veterinary Hospital*, 377 F.3d 266, 269 (3d Cir. 2004)(quoting *Powell v. J.T. Posey Co.,* 766 F.2d 131, 133-34 (3d Cir. 1985)).

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 5

"'The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.'" *Johnson v. Campbell*, 332 F.3d 199, 204 (3d. Cir. 2003)(quoting *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1078, 1083 (3d Cir. 1995)).

### B. Rule 59

A motion for a new trial pursuant to Rule 59 may be granted "on all or some of the issues— and to any party. . . ." FED. R. CIV. P. 59 (a). There are three principal grounds on which a motion to alter or amend judgment may be based: "(1) an intervening change in the controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct a clear error [of law] to prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)(alterations in original)(quotation marks omitted).

### III. <u>ANALYSIS</u>

### A. The Sellers' Rule 50 Motion

The Sellers seek judgment as a matter of a law on their breach of contract and fraud claims against Taylor. They assert that such relief is appropriate based on (1) what the Sellers perceived as a presumed partnership formed among Addie, Perez,

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 6

and Taylor and (2) the evidence of Taylor's own conduct including
(a) his alleged fraudulent misrepresentation and (b) his alleged
breach of the terms of the Contracts of Sale.  The Sellers also
seek judgment as a matter of law in their favor on Taylor's
breach of contract claim against them.  The Court will address
each assertion seriatim.

### 1.  Taylor's Liability as a Presumed Partner of Addie and Perez

The Sellers assert that Taylor should have been found liable
for the misrepresentations made and breaches of contract
committed by Addie and Perez, because the evidence at trial
established that the Buyers had formed a partnership.  They thus
contend that Taylor is liable for the duties and obligations his
partners breached in the course of performing partnership-related
business.

A partnership is defined under Virgin Islands law as "the
association of two or more persons to carry on as co-owners a
business for profit. . . ." V.I. CODE ANN. tit. 26, § 22(a).
"Joint tenancy, tenancy in common, tenancy by the entireties,
joint property, common property, or part ownership does not by
itself establish a partnership, even if the co-owners share
profits made by the use of property." *Id.* at (c)(1).

The discrete question of whether Perez, Addie, and Taylor

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 7

had formed a partnership was not submitted to the jury.
Notwithstanding that fact, the Sellers curiously attempt to use a
Rule 50(b) motion to litigate the existence of a partnership at
this stage.  In so doing, the Sellers implicitly urge the Court
to presume that the jury answered that question in reaching its
verdict and found a partnership because they found two putative
partners liable for fraud and breach of contract.

    If the Court were to engage in such an effort, it would
likely have to speculate about the underpinnings of the jury's
deliberations.  Courts are ill advised to undertake such
ventures.  Moreover, the record supports a jury finding that a
partnership did not exist.  Though there was some testimony
regarding early discussions about shared profits related to the
development of the Great St. James property, there was no
evidence of business operations or a fixed profit-sharing
arrangement between the Buyers.  As such, despite some
preliminary discussions regarding business plans, there was not
sufficient crystallization of those plans to amount to the
formation of a partnership.  In sum, the Court does not find
sufficient grounds to award judgment as a matter of law on the
fraud claim based on the existence of a partnership between
Addie, Perez, and Taylor.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 8

**2. The Sellers' Claims**

**(a) The Fraud Claim Against Taylor**

The Sellers argue that judgment as a matter of law on their fraudulent misrepresentation claim against Taylor is appropriate. In order to establish that a party committed fraud, a claimant must establish: (1) a false representation of material fact , (2) the defendant's intent that the statement be acted upon, (3) reliance upon such a statement by the persons claiming to have been deceived, and (4) damages." *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp.2d 545, 568-69 (D.V.I. 2004)(citations omitted). The Sellers' motion for judgment as a matter of law on their fraud claim centers on the false representation of material fact element of their fraud claim.

Paragraph 12 of the Contracts of Sale provides:

> 12. FINANCING: This is a cash offer. Any fees, costs or expenses incurred by Seller related in any way to the financing of this transaction shall be paid by the Buyer. Buyer represents that it is financially able to close.

(Contracts of Sale ¶ 12, Trial Ex. 73; Trial Ex. 365.)  The Sellers assert that Taylor was unable to meet the financing requirements of the Contracts of Sale and misrepresented his financial ability to close the transaction.  They cite Taylor's testimony that at the time he entered into the Contracts he did

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 9

not personally possess the funds required under the contract.

Taylor testified that he believed at the time he entered the

Contracts of Sale, he had the financial ability to close:

> Q.  At the time that you entered into this contract in
> June 2004, what did you believe was your financial
> ability to close the transaction?
>
> A.   I was confident that I could put together the
> money to close the transaction, between, between my
> money and outside investor money and financing, I
> believe we -- I was confident that we could do that.
> Confident enough to put up a deposit that knowing all,
> all along I could lose it, if I could not -- only if,
> only if the sellers were able to perform everything
> they were.  I was  comfortable enough to put that
> deposit up at the time.
>
> Q.  To your knowledge at the time that you entered
> into this contract, was it your understanding, or what
> understanding did you have as to whether you would be
> able under the terms of the contract to attempt to
> secure financing?
>
> A.   I believe I was, it was well within my right to
> obtain financing.

(Trial Tr. at --, Jun. 22, 2009.)  The jury could have reasonably

found from his testimony that at the time of contracting, he

believed in good faith that he would be able to secure sufficient

funds to complete the transaction.

 Other than arguments, the Sellers offered nothing to rebut

Taylor's assertions.  A failure to establish the falsity of a

misrepresentation is fatal. *See Schnellmann v. Roettger*, 645 S.E.

2d 239, 241 (S.C. 2007)("The failure to prove any element of

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 10

fraud or misrepresentation is fatal to the claim."); *Hubert v. Joslin*, 280 N.W. 780, 782 (Mich. 1938)(noting that the plaintiffs were required to prove "each and every element of fraud and misrepresentation" in order to prevail on their claim).  In light of such failure, the Sellers have not established that judgment as a matter of law is appropriate on their fraudulent misrepresentation claim against Taylor.

**(b) The Breach of Contract Claim Against Taylor**

The Sellers also assert that judgment as a matter of law is appropriate on their breach of contract claim against Taylor.  In order to establish a breach of contract claim under Virgin Islands law, a plaintiff must establish: "'(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages.'" *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009)(quoting *Galt Capital, LLP v. Seykota,* 2007 U.S. Dist. LEXIS 53199, at *6 (D.V.I. July 18, 2007)).

The main duties of performance for the Buyers and Sellers respectively, were the payment of the purchase price and the conveyance of title.  The parties contracted that these performances would occur simultaneously at closing.  The Contracts of Sale stated that the "balance of the Purchase Price, less the Earnest Money and subject to any adjustments, credits and prorations" was to be tendered at closing. (Contracts of Sale

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 11

¶ 15(i).)) Also at closing, the Sellers would "convey a Clear and Marketable title and an insurable Warranty Deed for the Real Property to the Buyer." (*Id.* at ¶ 6.) A closing never occurred in connection with this transaction.  The parties disagree about who bears responsibility for the aborted closing.

The agreed upon closing date is significant in determining when the parties were obligated to perform.  Paragraph 4 of the Contracts that: "[t]he Closing shall occur at a mutually acceptable time of day within sixty (60) days of execution of this Agreement." (Contracts of Sale ¶ 4.) It further states that "[t]ime is of the essence." (*Id.*) Addie, Perez, and the Sellers' attorney-in-fact, D'Amour, met and signed the Contracts of Sale on June 4, 2004.  Thereafter, Taylor signed the Contracts of Sale on June 15, 2004.

At trial, there was evidence that pursuant to Article 1.1 of the Escrow Agreement, Taylor paid an additional $500,000 to extend the closing date by thirty days.  Thus, assuming Taylor executed the Contracts on June 15, 2004, his last day to close was September 15, 2004.  Notwithstanding the evidence that points to this conclusion, the parties each urge different conclusions.

Taylor pointed to an email sent from D'Amour to Perez and Addie on September 8, 2004, as securing for them a second extension of the closing date.  In that email D'Amour stated as

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 12

follows:

> As a follow-up to my conversation with Jorge yesterday, my
> clients have consented to a one week extension of time to
> close.  The original closing date was September 4, 2004.
> Since this fell on a Saturday, the next business day was
> September 7, 2004 (see Section 4) The closing date is now
> September 14, 2004.  Time is of the Essence.  This extension
> shall not be deemed a waiver of any rights the sellers have
> under the Contract.

(Trial Ex. 227.)  Taylor argued that D'Amour's email granted an

additional ten days beyond the thirty-day extension time period.

Thus, he argues that his closing date was September 25, 2004.

The Court is not persuaded.

The express language of D'Amour's email does not grant a

blanket ten-day extension, but rather indicates that the Sellers

consented to extend the closing date from September 4, 2004 to

September 14, 2004.  Moreover, in his email, D'Amour highlighted

the fact that the grant of such an extension was not to be viewed

as a waiver of any of the Sellers' contractual rights.

The Sellers also assert that closing should have occurred

on a date other than September 15, 2004. They argue for the

collective treatment of the Buyers under the Contracts, such that

the signing by Addie and Perez on June 4, 2004, executed the

Contracts of Sale for all three individuals classified as

"Buyer."  They thus assert that Taylor's closing date under the

Contracts of Sale should have been the same date as the other

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 13

Buyers, Addie and Perez[1]. That position is legally questionable.

The signature page of the Contracts of Sale reads in pertinent part: "This agreement becomes a binding legal contract when executed by all parties, and each party should read and understand its terms and conditions." (Trial Ex. 66.) A legal document is typically executed by an individual's signature on the document. The Sellers suggest that once one of the Buyers signed the document along with the Sellers' attorney-in-fact, D'Amour, all parties to the Contracts had executed. The Restatement does not support the Sellers' position. Indeed, when referring to the principle that multiple individuals may promise to render the same performance, it speaks about such individuals as distinct parties. Restatement (Second) of Contracts § 288(1) (1981)("Where two or more *parties* to a contract make a promise or

---

[1]The Sellers argue that Taylor's position that he executed the Contracts of Sale on June 15, 2004 fatally varies from his position in the Complaint, statements of facts, stipulations and the Final Joint Pretrial Order that the Plaintiffs entered into the Contract on June 4, 2004. "The Rule is familiar and elementary that the pleadings and proof must correspond, but a rigid exactitude is not required." *Standard Oil Co. v. Brown*, 218 U.S. 78, 85 (1910). Moreover "[g]enerally, pretrial orders under Rule 16 are to be liberally construed to embrace all legal and factual theories inherent in the issues defined therein." *United States Gypsum Co. v. Schiavo Bros.*, 668 F.2d 172, 181 n. 12 (3d Cir. 1981).

The Court further notes that "[a]s a general rule, the burden is upon the one pleading a contract to prove the contract substantially as pleaded, but every variance between the contract pleaded and the proof offered is not a fatal one and a variance in the date is one of the exceptions to this rule . . . ." *Ingram v. Gentry*, 205 S. W. 2d 673, 676 (Tex. Civ. App. -- Waco 1947, no writ). As such, the Court does not find that the allegations in the pleadings should have precluded Taylor from offering evidence at trial that he executed the Contracts of Sale on June 15, 2004.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 14

promises to the same promisee, the manifested intention of the parties determines whether they promise that the same performance or separate performances shall be given.")(emphasis supplied). The Court thus does not find that under the terms of the Contracts, Addie and Perez executed the document for Taylor.

Notwithstanding that determination, if Addie or Perez were serving as Taylor's agent, their signatures may have effectuated an execution on his behalf. Under agency principles, such authority may be granted via a written agreement between a principal and an agent or via apparent authority, if the principal behaves in a manner that when "reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) of Agency § 27 (1958). The problem for the Sellers is that there was no evidence that a written agreement existed authorizing Addie and Perez to sign on Taylor's behalf. Further, the arrangement for Taylor's separate signing seems to belie the notion that Addie and Perez behaved in a way that communicated they were signing on his behalf. The Sellers failed to establish that Addie and Perez acted as an agent for Taylor in executing the Contracts.

Having determined that the last possible closing date for Taylor was September 15, 2004, the Court turns to whether he

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 15

fulfilled his contractual obligations.  Under the Restatement

(Second) of Contracts,

> [w]here all or part of the performances to be exchanged
> under an exchange of promises are due simultaneously,
> it is a condition of each party's duties to render such
> performance that the other party either render or, with
> manifested present ability to do so, offer performance
> of his part of the simultaneous exchange.

Restatement (Second) of Contracts § 238 (1981).  Under the

Contracts, the Buyers were to pay the purchase price and the

Sellers were to convey Clear and Marketable title at

closing. The fulfillment of each obligation was a concurrent

condition to the other.

There is no record evidence that Taylor tendered any

offer to pay the purchase price on the outer limit of his

closing time frame[2].  Instead, Taylor seems to have

unilaterally determined that the Sellers were in breach and

that he had no responsibility to offer performance.  Such an

approach is not supported by law. *See Retrofit Partners I,*

*L.P. v. Lucas Indus., Inc.,* 201 F.3d 155, 160 (2d Cir.

_____

[2] On September 22, 2004, Taylor's counsel sent D'Amour a letter
registering objections to the title reflected in the title commitment that had
been prepared (Trial Ex. 231 & 232.) At trial, Taylor noted that the Sellers
failed to cure such objections prior to his purported closing date of
September 25, 2010.  As such, he contended that he was under no requirement to
offer performance on September 25, 2010.  Given the Court's finding that
September 15, 2004 was the outer limit of his possible closing dates, Taylor's
untimely tender of objections to the title does not insulate him from
liability for a breach of his contractual obligations.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 16

2000)(noting that when a contract provides that "time is of
the essence," generally "insofar as a time for performance
is specified in the contract, failure to comply with the
time requirement will be considered to be a material breach
of the agreement"); *see also Vidal v. Transcon. & Western
Air, Inc.,* 120 F.2d 67, 68 (3d Cir. 1941)("[T]o maintain an
action at law the plaintiff must not be ready and willing
but he must have manifested [an offer of performance] before
bringing his action, by some offer of performance to the
defendant[.]" )(quoting WILLISTON ON CONTRACTS, 2d Ed., § 832);
*Meier v. Tx.* Co., 168 F. Supp. 119, 124 (C.D. Pa.
1958)(noting that in the context of a contract for the
plaintiff's abandonment of claims against defendant company
in exchange for payment, "[t]he duty of each party's
performance was conditioned on a tender by the other party
of the return performance in execution of a simultaneous
exchange"); *Subissi Holdings, L.P. v. Hilcorp Energy I,
L.P.*, 2008 WL 2515698, at *4 (Tex. Ct. App. Jun. 25,
2008)(noting that if a contract calls for the performance of
concurrent conditions, a party's readiness to perform, short
of actual performance, is sufficient to place the other
party in default).

Given Taylor's failure to even offer performance, it

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 17

appears that Taylor failed to fulfill his contractual
obligations. To avoid such a finding, Taylor suggests two
main reasons why his obligation was extinguished such that
he would be absolved of any responsibility to perform.  He
asserts that (1) the Sellers materially breached the
Contracts by providing deficient escrow documents and (2)
the Sellers' tender of escrow documents in conformity with
the escrow agreement was a condition precedent to his
obligation to perform under the land contracts.

Taylor argues that the Sellers committed a material
breach when they failed to deliver satisfactory escrow
documents, which excused the Buyers of any duty to offer
performance.  The Restatement (Second) of Contracts provides
that, except as otherwise provided therein, "it is a
condition of each party's remaining duties to render
performances to be exchanged under an exchange of promises
that there be no uncured material failure by the other party
to render any such performance due at an earlier time."
Restatement (Second) of Contracts § 237 (1981).  The
Comments to that Section highlight that a material failure
in performance results in the non-occurrence of a condition.
*Id.* cmt. a.  Following the non-occurrence of such a
condition, there are two possible consequences: (1) the

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 18

"preventi[on] [of] the performance of the duty from becoming
due, at least temporarily" or (2) "discharg[e] [of] the duty
when the condition can no longer occur." *Id.* (internal
citation omitted).

In assessing whether an asserted deficiency in
performance constitutes a material breach, the Restatement
(Second) of Contracts counsels the examination of the
following factors:

> (a) the extent to which the injured party will be
> deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be
> adequately compensated for the part of that benefit of
> which he will be deprived;
>
> (c) the extent to which the party failing to perform or
> to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or
> to offer to perform will cure his failure, taking
> account of all the circumstances including any
> reasonable assurances;
>
> (e) the extent to which the behavior of the party
> failing to perform or to offer to perform comports with
> standards of good faith and fair dealing.

*Id.* at § 241.

The Buyers offered evidence that the Sellers submitted
expired permits for the docks on the property as part of
their tender of escrow documents.  Their position was that
the tender of expired permits constituted a material breach
in the Contracts.  Evidence at trial revealed that there was

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 19

an avenue to renew expired permits. (*See* Trial Tr. at --,
June 23, 2009)(John-Pierre Oriol, processor at the
Department of Planning and Natural Resources, explaining the
permit revival process).

In analyzing the materiality of the tender of expired
permits, the Court notes that the curability of the permits
influences its analysis of factors (a) through (c).
Although there is no indication that renewal of the permits
would have been completed before Closing, the availability
of the option of renewal would have presented an option
short of otherwise compensating the Buyers for loss of the
permits.  Moreover, the revival of the permits could have
prevented the forfeiture or deprivation of the use of the
docks.  The Court finds that factors (a) through (c) do not
weigh in favor of a finding of materiality.  With respect to
factor (d), there was no dialogue between the Buyers and
Sellers about curing problems with the permits.  As a
consequence, the evidence as to that factor is inconclusive.

As to the final factor, the Buyers presented letters
sent by the Department of Planning and Natural Resources
("DPNR") to Christian Kjaer, in care of D'Amour, notifying
Kjaer of the expiration of the permits.  The Buyers did not
present any other evidence that the Sellers knowingly

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 20

attempted to deceive the Buyers by submitting expired
permits instead of active permits.  As such, factor (e),
does not support a determination of a material breach.
Considering all of the factors, the Court does not find a
material breach.

The Buyers also argued that the Sellers could not
convey the title promised in the Contracts, because the
operation of the Open Shorelines Act prevented the
conveyance of Clear and Marketable title, as that term was
defined in the Contracts of Sale[3].  The Virgin Islands Open
Shorelines Act prohibits restrictions to public access to
beaches and parks. V.I. CODE ANN. tit. 12, §§ 401 *et seq.* The
Buyers assert that the Open Shorelines Act constituted an
exception not authorized under the Contracts' definition of
Clear and Marketable title, and thus constituted a material
breach.

The Open Shorelines Act issue presented here does not

---

[3]The Contracts provide:

For purposes of this Agreement, "Clear and Marketable title" shall
be defined as such title as is acceptable to and insurable by
Buyer's title insurance company on ALTA Form B Owner's Policy (or
other reasonable form) free and clear of exceptions except
licenses and easements, if any, for public utilities, serving only
the Real Property.

(Contracts of Sale ¶ 6.)

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 21

suggest a material breach.  In the norm, in the context of land sales, a breach occurs where a *party* fails to convey what is promised or a *party* fails to cure a deficiency in what is promised.  *See, e.g., Post v. Palpar,* Inc., 7 Cal. Rptr. 823, 826 (1960)("The failure to tender marketable title at the time the contract matures is a material breach . . . ."); *Ferrara v. Walters*, 919 So. 2d 876, 882 (Miss. 2005)("[W]here a contract expressly provides a reasonable opportunity for the seller to cure discovered defects in title, the seller's failure to cure constitutes a material breach of the contract.").  The Court is unaware of any case in which the existence of a static condition of the law –- such as a statute -- created by a third party, here, the legislature, and preexisting the formation of a contract has ever been deemed a breach by a *party* to that contract.  Yet, that is precisely what the Buyers invite the Court to do. The Court must decline that invitation.

In applying the Restatement factors, several critical elements disfavor treating the existence of the Open Shorelines Act as a material breach.  First, Taylor failed to present evidence that they expected to develop the shoreline.  Second, there is no suggestion that the Sellers ever terminated communication with Taylor.  In the absence

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 22

of a showing that Taylor relied on the development of the
shoreline and that any limitation on such development was
incurable, the Open Shorelines Act issue falls short of
presenting a material breach.  Third, it is difficult to
conceive how access to a shoreline, which by law has been
the property of the government of the Virgin Islands since
1974, and is "to be administered in trust for the benefit of
the people thereof," could constitute an impairment to the
Sellers' title. 48 U.S.C. § 1705(a)[4]. Fourth, it is equally
difficult to conceive how a local law regarding access to
that shoreline talismanically becomes a material breach by a
*party* because it is recognized on an insurance policy.  It
is particularly troublesome where, as here, that law existed
for more than thirty years[5] prior to the contract's
formation.

---

[4]That section provides:

Subject to valid existing rights, all right, title, and interest
of the United States in lands permanently or periodically covered
by tidal waters up to but not above the line of mean high tide and
seaward to a line three geographical miles distant from the
coastlines of the territories of Guam, the Virgin Islands, and
American Samoa, as heretofore or hereafter modified by accretion,
erosion, and reliction, and in artificially made, filled in, or
reclaimed lands which were formerly permanently or periodically
covered by tidal waters, are hereby conveyed to the governments of
Guam, the Virgin Islands, and American Samoa, as the case may be,
to be administered in trust for the benefit of the people thereof.

48 U.S.C. § 1705(a).

[5]The Virgin Islands Open Shorelines Act was enacted in 1971.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 23

In the alternative, Taylor asserts that the tender of satisfactory escrow documents was a condition precedent to his duty to perform under the Contracts. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224. The provisions of the Contracts of Sale belie Taylor's argument. The Contracts make clear that the Buyers' payment and Sellers' conveyance of Clear and Marketable title are due at Closing, and do not insert the tender of escrow documents as a necessary precondition. Rather, the obligation of the tender of escrow documents is a product of the escrow agreement. Though the escrow agreement contemplates the land transaction between the Buyers and Sellers, it does not reorder the concurrent conditions promised in the Contracts. In sum, Taylor has failed to point to evidence that would suggest he was excused from his obligation to offer payment.

Ordinarily, Taylor's failure to offer performance would amount to a breach of the Contracts, which would allow the Sellers to recover on their breach of contract claim. However, other evidence adduced at trial confounds the outcome the Sellers urge. In this case, given the nature of

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 24

concurrent conditions, the Sellers' ability to recover against Taylor for his breach of the Contracts is linked to the Sellers' performance of their obligation. The Court will thus turn to the evidence presented as to the Sellers' performance.

### 3. Taylor's Breach of Contract Claim Against the Sellers

At the conclusion of the trial, the jury awarded Taylor $ 1,546,000 on Taylor's breach of contract claim against the Sellers[6]. The Sellers now assert that they are entitled to judgment as a matter of law on that claim.

The Court has outlined the parties' obligations under the Contracts of Sale above. It is undisputed that the Sellers failed to convey title to the Great St. James and Estate Nazareth properties. Such failure, on its face, would appear to place the Sellers in default of their contractual obligations.

To avert such a finding, the Sellers assert that their offer of escrow documents through their attorney-in-fact constituted a sufficient offer of performance to trigger the Buyers' duty to perform. While the Sellers' tender of

---

[6] In its August 14, 2009 Judgment the Court remitted that award to $1,500,000.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 25

escrow documents is relevant to their performance under the escrow agreement, they agreed to a separate delivery of documents in the Contracts of Sale.  Their tender of a warranty deed and title insurance policy among the escrow documents did not operate as an effective offer of performance of the second delivery -- a conveyance of Clear and Marketable title.[7] *See, e.g., United States v. O'Dell*, 247 F.3d 644, 682 (6th Cir. 2001)(noting that in the context of the delivery of a deed into escrow, "there has been no delivery until the condition has been satisfied"); *In re Chrisman,* 35 F. Supp. 282, 283 (C.D. Cal. 1940)("In California, as elsewhere, delivery of an instrument in escrow conveys no title."); *Masquart v. Dick*, 310 P.2d 732, 749 (Or. 1957)(noting that a deed held in escrow "does not become a deed and operate to convey title until the second delivery, or perhaps, more accurately speaking, until the performance of a condition")(quotation marks omitted); *Yost*

_____

[7] The Escrow Agreement provides that "[a]t the Closing (as such term is defined in the Contracts of Sale) the Escrow Agent shall deliver the Escrow Documents to the Buyer." (Trial Ex. 64 ¶ 2.3).  However, though the Escrow Agreement suggests that the Escrow Agent will aid in the delivery of the warranty deed and other escrow documents, such provision does not diminish the Sellers' involvement in the conveyance of the property. In order for a Closing to occur, the Sellers and Buyers needed to secure its occurrence "at a mutually acceptable time of day within sixty (60) days" of the execution of the Contracts. (Contracts of Sale ¶ 4.)  The Sellers have provided no authority for the proposition that once they placed a warranty deed for the properties in escrow, they were under no continuing obligation to ensure Clear and Marketable title was conveyed.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 26

*v. Miller*, 129 N.E. 487, 488 (Ind. App. 1921)("A deed in escrow conveys no title until final delivery."). *But see Matter of Newcomb*, 744 F.2d 621, 626 (8th Cir. 1984)(noting that "it is recognized that some interest in escrowed property is transferred to the ultimate grantee under the escrow at the creation of the escrow").  As the Sellers did not prove that they extended an appropriate offer to perform, they were in default.

     As each party to the contract is in default of its concurrent obligation, the Court must assess the viability of each party's concomitant claim for recovery based on the other's default.

### 4. The Effect of a Failure to Perform Concurrent Conditions

      In order to place another party in default of its obligation to perform a concurrent condition, a contracting party must make an offer of performance.

> An offer of performance meets the requirement stated in this Section even though it is conditional on simultaneous performance by the other party. The offer must be accompanied with manifested present ability to make it good, but the offeror need not go so far as actually to hold out that which he is to deliver.

Restatement (Second) of Contracts § 238 cmt. b (1981).  The Restatement cites the Uniform Commercial Code's discussion of

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 27

what an appropriate offer of performance entails–"'that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notice reasonably necessary to enable him to take delivery.'" *Id.* (quoting U.C.C. § 2-503).  In the context of concurrent conditions, a party's duty to perform is not triggered until the other contracting party makes a valid offer of performance, "and if both parties fail to make such an offer, neither party's failure is a breach." *Id.* at cmt. a.

Where, as here, a party asserts a breach of contract claim, and also commits a default[8] of a concurrent obligation, that party is precluded from recovery on its breach of contract claim. *See Vidal*, 120 F.2d at 68 ("Payment and delivery are concurrent conditions since both parties are bound to render performance at the same time.  In such a case, . . . neither party can maintain an action against the other without first making an offer of performance himself.")(internal citations omitted).  As such, as a matter of law, the Sellers cannot recover on their breach of

---

[8] The Court notes that some courts have used the term "breach" or "default" when describing the mutual non-performance of parties under a contract. *Brown  v. Slee*, 103 U.S. 828, 837 (1880) ("Neither party offered to perform on the day, and, therefore, one was as much in default as the other.");  *Ocean Atl. Dev. Corp. v. Willow Tree Farm, L.L.C.*, No. 01-5014, 2004 U.S. Dist. LEXIS 4152, at *33 (N.D. Ill. Mar. 17, 2004) ("[T]his case boils down to the fact that both parties breached and, therefore, neither can recover against the other."). In spite of differences in nomenclature, there is a consensus that in a bilateral contract calling for the performance of concurrent conditions, where neither party tenders an offer to perform, both parties are precluded from bringing an action for breach of contract.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 28

contract claim against Taylor.  The corresponding effect of that result is problematic for Taylor.

Typically, the Sellers' default would allow Taylor to prevail on his breach of contract claim.  However, because Taylor similarly failed to tender performance of his concurrent contractual obligation, he too is barred from recovering on his breach of contract claim. *See id.*

**B. The Sellers' Rule 59 Motion**

To the extent that they do not prevail on their motion for judgment as a matter of law, the Sellers seek an amended judgment.  The Sellers urge the Court to "amend the judgment under Rule 59 to the extent that it treats Taylor differently from his breaching partners and award damages in favor of the Sellers." (Sellers' Mem. of Law in Supp. of Renew. Mot. for J. as a Matter of Law, Am. J., or Alternatively New Trial 18.)  That basis for recovery essentially restates the Sellers' partnership theory for recovery against Taylor that the Court has already rejected.  It is equally unavailing here.  However, the Sellers are not without an avenue for relief on their Rule 59 motion.

In light of the Court's determination that Taylor's failure to tender an offer of performance bars recovery on his breach of contract claim, the Court finds that amending the Judgment insofar as it awards Taylor damages on that claim is appropriate.

*Addie, et al. v. Kjaer, et al.*
Civil No. 2004-135
Memorandum Opinion & Order
Page 29

To the extent the Sellers' motion seeks an award of damages in the Sellers' favor on their breach of contract claim, their request fails.

The premises considered, it is hereby

**ORDERED** that the Sellers' motion for judgment as a matter of law against Taylor on the Sellers' fraud claim is **DENIED**; it is further

**ORDERED** that the Sellers' motion for judgment as a matter of law against Taylor on the Sellers' breach of contract claim is **DENIED**; it is further

**ORDERED** that the Sellers' motion for judgment as a matter of law in their favor on Taylor's breach of contract is **DENIED**; it is further

**ORDERED** that the Sellers' motion for amended judgment is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Court's August 14, 2009 Judgment insofar as it awarded Taylor $1,500,000 on his breach of contract claim against Sellers is **AMENDED** to award Taylor $0 on his breach of contract claim.

                              S\_____
                                **CURTIS V. GÓMEZ**
                                  **Chief Judge**