**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

**ROBERT ADDIE, JORGE PEREZ and JASON TAYLOR,**

**Plaintiffs,**

v.

**CHRISTIAN KJAER, HELLE BUNDGAARD, STEEN BUNDGAARD, JOHN KNUD FÜRST, KIM FÜRST, NINA FÜRST, and KEVIN F. D'AMOUR,**

**Defendants.**

**Civil No. 2004-135**

**ATTORNEYS:**

**Gregory H. Hodges, Esq.**
St. Thomas, U.S.V.I.
*For the plaintiffs.*

**Carol G. Hurst, Esq.**
St. Thomas, U.S.V.I.
*For defendants Christian Kjaer, Helle Bundgaard, Steen Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst.*

**Maria T. Hodge, Esq.**
St. Thomas, U.S.V.I.
*For defendant Kevin F. D'Amour.*

**MEMORANDUM OPINION**

Before the Court is the motion by Robert Addie ("Addie) and Jorge Perez ("Perez") for judgment as a matter of law on the fraud counterclaim on which they were found liable.

## I. FACTS

Robert Addie, Jorge Perez and Jason Taylor (collectively the "Buyers"), entered into Contracts of Sale (the "Land Contracts") to purchase two parcels of land from Christian Kjaer; Helle Bundegaard; Steen Bundegaard; John Knud Furst; Kim Furst; and Nina Furst (together, the "Sellers"): Great St. James Island, St. Thomas, U.S. Virgin Islands ("Great St. James"), and Parcel No. 11 Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas, U.S. Virgin Islands ("Estate Nazareth"). The Buyers also signed an Escrow Agreement in which they agreed to pay $1.5 million into an escrow account managed by Premier Title Company, Inc., formerly known as First American Title Company, Inc. ("First American Title"). At all times relevant, defendant Kevin D'Amour was First American Title's president and sole shareholder. D'Amour also acted as counsel to the Sellers. Neither parcel of land was conveyed as the parties contemplated. The Buyers demanded the return of the escrow money. The escrow money was not returned. This action ensued.

The Buyers alleged the following: breach of contract; fraud by certain defendants; fraud by D'Amour; conversion; breach of fiduciary duty by Premier; and unjust enrichment. The Buyers also sought a declaration that: they are entitled to terminate the land contracts; the Sellers cannot deliver marketable title to the land; and the Sellers have defaulted under the terms of

the land contracts. The Sellers asserted two counterclaims, one for fraudulent misrepresentation and another for breach of contract against the Buyers.

This matter was tried to a jury from June 22, 2009 to July 2, 2009. Following deliberations, the jury found Addie and Perez liable for fraud on the Seller's counterclaim. The jury found Taylor not liable for fraud on that claim. The jury awarded the Sellers $339,516.76 on the fraud counterclaim.

In August 2009, the Court entered judgment in this matter. Addie and Perez now move for judgment as a matter of law in their favor on the Sellers' fraud counterclaim.

## II. <u>DISCUSSION</u>

Judgment as a matter of law pursuant to Rule 50 should be granted "only if, viewing the evidence in the light most favorable to the nonmovant and giving [the nonmovant] the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). " 'The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.'" *Johnson v. Campbell*, 332 F.3d

199, 204 (3d. Cir. 2003)(quoting *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)).

**III. ANALYSIS**

"The 'gist of the action' doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002)(citation omitted; applying Pennsylvania law).

> The gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.

*etoll, Inc. V. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002)(internal citations omitted; applying Pennsylvania law). The Sellers alleged in their fraudulent misrepresentation claim that the Buyers "made material misrepresentations in Paragraph 12 of the Contracts of Sale, regarding Plaintiffs' financial ability to close with cash" and misrepresented that Cristina Montana was the Selling Realtor in the Contracts of Sale[1]. (Sellers' Am. Answer and Countercl. ¶

[1] To the extent that the Sellers' misrepresentation counterclaim relies on the representation that Cristina Montana was the selling realtor it fails on other grounds. The Restatement (Second) of Torts provides in pertinent part: "[t]he maker of a fraudulent misrepresentation is not liable to one who does not rely upon the expectation that the maker will be held liable in

101.) In the Sellers' breach of contract claim, they asserted that the "Plaintiffs breached the material term contained in Paragraph 12 of the Contracts of Sale wherein Plaintiffs affirmatively represented that Plaintiffs had the financial ability to close with cash." ( *Id.* ¶ 107.) Clearly, the fraudulent misrepresentation claim seems to flow directly from the same set of facts that serve as the basis for the breach of contract claim. Thus, the Sellers' tort claim, on its face, would seem to be barred by the gist of the action doctrine. *See, e.g., Bishop v. GNC Franchising LLC*, 248 Fed. Appx. 298, 300 (3d Cir. 2007)(finding the gist of the action doctrine appropriately

---

damages for its falsity." Restatement (Second) of Torts § 548 (1977); *see also Johnston v. Venturini*, 294 F.3d 836, 839 (3d Cir. 1924)("[T]he rule requires that a false representation, in order to be cognizable by the law as a fraud, must be relied on as an inducement to action or to injurious change of position. In other words, the party to whom the fraudulent representation was addressed must have been induced by it to do something to his injury.")

The Sellers failed to adduce any scintilla of evidence that they relied on the representation that Montana was the selling realtor. A failure to establish such evidence is fatal to a claim for fraud. *Allstate Ins. Co v. Receivable Finance Co., LLC*, 501 F.3d 398 (5th Cir. 2007)(determining that the evidence was insufficient to support a jury verdict of fraud on insurers' fraud claim against a group of chiropractic clinics and its affiliates related to grossly excessive billings, where there was no evidence of actual reliance on the chiropractor's billings and medical documents associated with claims); *Butler v. Pettigrew*, 409 F.2d 1205 (7th Cir. 1969)(affirming the trial court's determination that where the record was "completely barren of any evidence from which it can be inferred that the plaintiffs relied upon the alleged false representations of the defendants," they could not recover on their fraud claim); *Fisher v. Grove Farm Co., Inc.*, 230 P.3d 382 (Hawai'i App. Dec. 29, 2009)("Because [the claimant] undisputably failed to adduce any evidence with respect to his reliance on the alleged fraud, there was no legally sufficient evidentiary basis for a reasonable jury to find in his favor on his fraud count.").

applied where the contractual duties alleged in the plaintiff's contract claim were "the same ones that form[ed] their fraud and negligent misrepresentation claim"); *Bealer v. Mutual Fire, Marine & Inland Ins. Co.*, 242 Fed. Appx. 802, 804 (3d Cir. 2007)(determining that "[the plaintiff's] claims of negligence , negligent misrepresentation, and fraud are barred because the gravamen of the claims is in contract"). The Court's inquiry does not end here, however.

The Sellers assert that they amended their fraudulent misrepresentation claim to state a fraudulent inducement claim at trial. They note that the evidence presented at trial demonstrated that the Buyers misrepresented their ability to close with cash when they entered into the Contracts, at least in part to derail the Sellers' negotiations with another potential buyer, and induce the Sellers to concentrate on the Buyers. As such, they argue that the gist of the action doctrine does not apply.

The crux of the "gist of the action" analysis is whether the duty at issue is merely a reproduction of a claim for breach of a duty under a contract or whether the action arises "from breach of duties imposed as a matter of social policy." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)(citations omitted). The distinction between a fraudulent

inducement claim and a fraud claim based on a parties' failure to perform[2] has been deemed "crucial" with respect to the application of the gist of the action doctrine. *Air Products & Chem. Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003); *see also Hart v. Arnold,* 2005 884 A.2d 316, 341 (Super. Ct. 2005)(applying Pennsylvania law). This difference has been found significant because fraud in the inducement claims are much more likely to implicate a social policy against fraud independent of the contractual requirements to which the parties have bound themselves. *Id.*

However, the allegation of a fraudulent inducement claim does not automatically preclude the operation of the gist of the action doctrine. "[P]romises made to induce a party to enter into a contract *that eventually become part of the contract* itself cannot be the basis for a fraud-in-the inducement claim under the gist of the action doctrine." *Freedom Props., L.P. v. Lansdale Warehouse Co.,* Civ. No. 06-5469, 2007 U.S. Dist. LEXIS 57116, at *17 (E.D. Pa. Aug. 3, 2007)(emphasis supplied; citations omitted).

In order to properly assess the relevant fraud claim, the

[2] Such conduct presents itself when there is "no deceit in the initial contract procurement, but fraud in its performance, as a party trying to protect its profit margin stops complying with certain contracts specifications while at the same time falsely representing strict compliance." *United States v. Canova*, 412 F.3d 311, 353 n. 22 (2d Cir. 2005).

Court must first determine if the Sellers properly amended their pleadings. Federal Rule of Civil Procedure 15(b) allows for amendments of pleadings to conform with evidence offered at trial:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2). There is no express statement by the Buyers consenting to the amendment of the fraudulent misrepresentation to a fraudulent inducement claim. Nevertheless, the Court must assess whether there was implied consent to the amendment of the claim.

Factors to consider in determining whether an issue was tried by implied consent include: "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995)(quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994)).

Though the Sellers, in some instances, discussed the

misrepresentation claim as stemming from the Buyer's misrepresentation about their financial ability to close separate from their representation in the Contracts, they frequently discussed that misrepresentation as related to Paragraph 12 of the Contracts[3].

The Sellers contend the Buyers recognized fraud in the inducement as an issue when presenting evidence about their knowledge of their inability to close with cash at the time they entered into the Contract. At trial Taylor was questioned about his representation about his ability to close:

> MS. RODRIGUEZ: Paragraph 12.Financing. This is a cash offer. Any fees, costs or expenses incurred by seller related in any way to financing of this transaction shall be paid by the buyer. Buyer represents that it is financially able to close.
>
> Q. First of all, Mr. Taylor, at the time that you executed this contract in June of 2004, did you believe that you were financially able to close?
>
> MS. HODGE: Objection, leading.
>
> THE COURT: Sustained. Rephrase your question.
>
> BY MS. RODRIQUEZ: Q. At the time that you entered into this contract in June 2004, what did you believe was your financial ability to close the transaction?

---

[3] That provision provided: "FINANCING: This is a cash offer. Any fees, costs or expenses incurred by Seller related in any way to the financing of this transaction shall be paid by the Buyer. Buyer represents that it is financially able to close." (Trial Ex. 365)

> A. I was confident that I could put together the money to close the transaction, between, between my money and outside investor money and financing, I believe we -- I was confident that we could do that. Confident enough to put up a deposit that knowing all, all along I could lose it, if I could not -- only if, only if the sellers were able to perform everything they were. I was comfortable enough to put that deposit up at the time.
>
> Q. To your knowledge at the time that you entered into this contract, was it your understanding, or what understanding did you have as to whether you would be able under the terms of the contract to attempt to secure financing?
>
> A. I believe I was, it was well within my right to obtain financing.

(Trial Tr. at --, Jun. 22, 2009.) As this inquiry was presented by Taylor's counsel, obviously Taylor did not object to its introduction. However, Taylor's testimony offers no plain indication that the Buyers were operating as if the relevant misrepresentation was as to statements leading up to the Contracts, and not the representation made in paragraph 12 of the Contracts. The testimony about Taylor's intent in making a statement about his financial ability to close, closely followed a question about paragraph 12. In sum, the testimony of Taylor does not suggest that the Buyers opened the door to the amendment of the Sellers' counterclaim.

The Court next turns to the prejudice occasioned by the

raising of the issue of fraudulent inducement. With neither a clear indication of the statement being challenged, nor a clear understanding of the alleged fraudulent contact, the Buyers could not fairly be said to be on notice about the claim against which they were defending. A party who presents an unpled issue at trial, but fails to raise such an issue unequivocally, does not have a strong claim that such an amendment is without prejudice to the opposing party. *See Shell Petroleum Inc. v. United States*, 182 F.3d 212, 219 (3d Cir. 1999)(rejecting a plaintiff's contention that it properly raised unpled issues at trial and noting that it had failed to raise such issues in an "unequivocal manner"). Indeed, the Court of Appeals for Third Circuit has reasoned that "an issue has not been tried by implied consent if evidence relevant to the new claim is also relevant to the claim originally pled, because the defendant does not have any notice that the implied claim was being tried." *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995).

Here, the evidence necessary to support a claim for the fraudulent inducement claim and the fraudulent misrepresentation claim advanced in the complaint would substantially overlap. The critical difference would be the relevant time frame when the misrepresentation was actually made. For the misrepresentation as pled, the contractual representation would have occurred when

the Contracts were executed. As to the misrepresentation that induced the Contracts, the significant time period would have been during pre-contractual negotiations. The relevant evidence as to the substance of the representation, its materiality, and the intent of the Buyers in making the representation would be nearly identical. Considering the factors, the Sellers have failed to establish that amending their counterclaim is appropriate at this juncture.

Absent such an amendment, the Sellers' fraudulent misrepresentation claim essentially parrots the Sellers' breach of contract claim. The "gist of the action" doctrine "precludes plaintiffs from re-casting [their] breach of contract claims into tort claims" in this way. *eToll Inc.*, 811 A.2d 10, 14 (Pa Super. 2002). The misrepresentation asserted is one directly ascribed to a provision in the Contracts. Alleging fraud in making such a representation does not change the source of that duty. *Sunquest Information Sys. Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999)(noting that "the gist of the action doctrine cannot be evaded by the mere expedient of pleading that the defendant acted negligently, recklessly, wantonly, or intentionally, if the gravamen of the claim is that the plaintiff failed to fulfill a promise"); *Hart v. Arnold*, 884 A. 2d 316, 341 (Super. Ct. 2005)(finding the gist of the action doctrine

applicable where "the performance duties arose solely from the contract between the parties and were created and grounded in the action itself"); *see also Alexander Mills Srvs. LLC v. Bearing Distributors, Inc.*, 2007 WL 2907174, at *9 (W.D. Pa. Sept. 28, 2007)(" Making boiler plate allegations that a defendant's failure to live up to its contractual obligations proves that the statements concerning its ability and approach were false, fraudulent or misleading reflects nothing more than the epitome of a self-serving attempt to bootstrap a contract claim into one for fraud."). The Court thus concludes that the gist of the action doctrine bars the Sellers' fraudulent misrepresentation claim, and will amend its judgment accordingly. An appropriate Order follows.

**S_____________________**
**CURTIS V. GÓMEZ**
**Chief Judge**