**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **ROBERT ADDIE, JORGE PEREZ, and JASON TAYLOR,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 2004-135** |
| **CHRISTIAN KJAER, HELLE BUNDGAARD, STEEN BUNDGAARD, JOHN KNUD FÜRST, KIM FÜRST, NINA FÜRST, PREMIER TITLE COMPANY, INC., formerly known as FIRST AMERICAN TITLE COMPANY, INC., and KEVIN F. D'AMOUR,** | ) | |
| **Defendants.** | ) | |

**ATTORNEYS:**

**Gregory H. Hodges, Esq.**
St. Thomas, VI
*For plaintiffs Robert Addie, Jorge Perez, and Jason Taylor,*

**Carol G. Hurst, Esq.**
St. Thomas, VI
*For defendants Christian Kjaer, Helle Bundgaard, Steen Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst,*

**John K. Dema, Esq.**
St. Croix, VI
*For defendant Premier Title Company Inc., formerly known as First American Title Company Inc.,*

**Maria T. Hodge, Esq.**
St. Thomas, VI
*For defendant Kevin F. D'Amour.*

**ORDER**

**GÓMEZ, J.**

Before the Court is the February 11, 2014, motion of Kevin F. D'Amour ("D'amour") for costs and attorney's fees, and the motions of Jason Taylor for interest on the judgment and attorney's fees and costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2004, the plaintiffs, Robert Addie, Jorge Perez and Jason Taylor ("Taylor") (together, the "Buyers"), brought an action for breach of contract and unjust enrichment against defendants Christian Kjaer, Helle Bundgaard, Steen Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst (together, the "Sellers").

The Buyers agreed to purchase two parcels of land from the Sellers: Great St. James Island, St. Thomas, U.S. Virgin Islands and Parcel No. 11 Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas, U.S. Virgin Islands. The Buyers also agreed to pay $1.5 million into an escrow account (the "escrow money") managed by Premier Title Company, Inc., formerly known as First American Title Company, Inc. ("Premier").[1] That money was provided by Taylor. At all times relevant, defendant Kevin D'Amour ("D'Amour") was Premier's president and sole shareholder. D'Amour also acted as counsel to the Sellers.

Neither of the two parcels of land was conveyed as the parties contemplated. The Buyers demanded the return of the escrow money. The escrow money was not returned. This action ensued.

---

[1] Premier is a former defendant in this matter. The Buyers settled their claims against Premier. Premier has been dismissed.

The Buyers alleged the following: breach of contract; fraud by certain defendants; fraud by D'Amour; conversion; breach of fiduciary duty by Premier; and unjust enrichment. The Buyers also sought a declaration that: they were entitled to terminate the land contracts; the Sellers could not deliver marketable title to the land; and that the Sellers defaulted under the terms of the land contracts.

On August 29, 2008, the Buyers filed a motion for partial summary judgment on their conversion claim against the Sellers. On October 21, 2008, the Sellers filed a cross-motion for summary judgment on that same claim. On February 23, 2009, the Court issued a Memorandum Opinion and Order granting the Sellers' motion for summary judgment on the Buyers' conversion claim, and granting in part and denying in part the Buyers' motion for summary judgment on that same claim. In its February 23, 2009, Order, the Court applied the "participation theory" and held that a corporate officer is personally liable for a tort based upon conduct taken in his corporate capacity while the corporate principal is exempt from any such liability. The Court found that D'Amour had "personally released the Escrow Money in contravention of the express conditions of the Escrow Agreement[.]" (Feb. 23, 2009, Mem. Op., ECF No. 617.) As a result, the Court granted summary judgment in favor of the

Buyers on their conversion claim as to $500,000 of the $1,500,000 escrow payment. (Feb. 23, 2009, Order, ECF No. 618.) The Court also ruled that D'Amour was not entitled to application of the gist of the action doctrine.

On February 27, 2009, D'Amour filed a motion for reconsideration on the Court's February 23, 2009, Order granting partial summary judgment. On April 28, 2009, the Court issued a Memorandum Opinion and Order denying D'Amour's motion for reconsideration.

This matter was tried to a jury from June 22, 2009, to July 2, 2009. Following deliberations, the jury found the Sellers liable on the Buyers' breach of contract and unjust enrichment claims. The jury also found Addie and Perez liable for breach of contract and fraud. The jury found that D'Amour had fraudulently failed to disclose and had engaged in fraudulent misrepresentation in the sale of the property at issue. (Jury Verdict, ECF No. 761.) The jury did not find Taylor liable for either of those claims. The jury found the Sellers liable on the Buyers' breach of contract claim against them. On August 14, 2009, the Court issued a memorandum opinion and entered judgment that, in part, awarded Taylor $1,500,000 on his breach of contract claim against the Sellers.

The Sellers moved for a judgment as a matter of law, arguing they were entitled to judgment on Taylor's breach of contract claim against the Sellers as well as judgment on the Seller's contract and fraud claims against Taylor. The Sellers also moved for an amended judgment against Taylor or for a new trial. On September 24, 2010, the Court issued a Memorandum Opinion and Order denying D'Amour's motions for a judgment as a matter of law, amended judgment, and new trial.

On March 1, 2011, the Court denied the Sellers' motion for a judgment as a matter of law. The Court amended the August 14, 2009, judgment insofar as it awarded Taylor $1,500,000 on his breach of contract claim against the Sellers; the Court amended it to award Taylor $0 on his breach of contract claim.

On May 13, 2011, the Court granted the Buyers' motion for judgment as a matter of law on the Sellers' fraud counterclaim and vacated its August 13, 2009, Order insofar as it awarded damages to the Sellers on their fraud counterclaim.

The parties filed appeals and cross-appeals to the Third Circuit.[1] The Circuit filed its opinion on December 16, 2013.

[1] On May 23, 2011, the Buyers filed a notice of appeal of the Court's August 14, 2009, Memorandum Opinion and Judgment, the Court's March 1, 2011, Order, and the Court's May 13, 2011 Memorandum Opinion and Order (the "Appeal"). On June 1, 2011, D'amour filed a notice of appeal of the Court's February 23, 2009, Order, April 28, 2009, Order, and September 24, 2010, Order (the "Second Cross-Appeal"). On June 7, 2011, the Sellers filed a notice of appeal

In its December 16, 2013, Opinion, the Circuit reversed this Court's August 14, 2009, order to the extent that it entered judgment against the Buyers on their unjust enrichment claim, and reinstated the verdict of the jury. The Circuit ordered this Court to enter judgment in Taylor's favor and to order the return of the deposit to Taylor.

The Circuit affirmed this Court's March 1, 2011, order (1) denying Sellers' motions for judgment as a matter of law on the breach of contract and fraud claims and (2) granting in part the Sellers' motion for amended judgment, by reducing Taylor's recovery against Sellers to $0.

The Circuit further affirmed this Court's May 13, 2011, order granting judgment as a matter of law in favor of Addie and Perez on the Sellers' fraud counterclaim.

The Circuit reversed this Court's April 28, 2009, order on D'Amour's motion for reconsideration of the District Court's February 23, 2009, order granting partial summary judgment on the Buyers' conversion claim for the second deposit of $500,000.

The Circuit reversed this Court's September 24, 2010, order denying judgment as a matter of law, amended judgment, or alternatively, a new trial to D'Amour on the fraud and

---

the Court's March 1, 2011, Order, and the Court's May 13, 2011 Memorandum Opinion and Order (the "Cross-Appeal").

conversion claims against him, and ordered that this Court enter judgment in D'Amour's favor finding him not liable.

This Court entered judgment in favor of Taylor, awarding him $1,500,000 on his unjust enrichment claim on April 3, 2014. On that date the Court also entered judgment in D'Amour's favor, finding him not liable.

## II. DISCUSSION

### A. Costs and Fees

Title 5, section 541 of the Virgin Islands Code provides:

Costs which may be allowed in a civil action include:

> (1) Fees of officers, witnesses, and jurors;
> (2) Necessary expenses of taking depositions which were reasonably necessary in the action;
> (3) Expenses of publication of the summons or notices, and the postage when they are served by mail;
> (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure;
> (5) Necessary expense of copying any public record, book, or document used as evidence in the trial; and
> (6) Attorney's fees as provided in subsection (b) of this section.

V.I. CODE ANN. tit. 5, § 541(a) (1986). The statute further provides: "there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto . . . ." *Id*. at (b); *see also Home Depot, U.S.A. v. Bohlke Int'l Airways,* Civ. No. 1998-102, 2001 U.S.

Dist. LEXIS 6935, at *1-2 (D.V.I. Apr. 30, 2001) ("The decision whether to award attorney's fees to a prevailing party is entirely within the Court's discretion." (internal citation omitted)).

**B. Pre-Judgment Interest**

"The matter of prejudgment interest is left to the discretion of the district court." *Taxman v. Bd. of Educ. of Twp. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996). Pre-judgment interest is warranted where necessary to make the claimant whole, "because he has been denied the use of money which was his[.]" *Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 212 (3d Cir. 1998).

## III. ANALYSIS

**A. D'Amour**

"Under section 541, a court may award costs or exercise its discretion to award attorney's fees to a prevailing party. The decision to award costs or attorney's fees is entirely discretionary. *See Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205, 1207 (3d Cir.1969)." *Anthony v. Abbott*, 304 F. App'x 66, 68 n.3 (3d Cir. 2008). Before engaging in an analysis of what costs and fees are properly recoverable by D'Amour in

this action, the Court must first comment upon the factual and legal background as relates specifically to D'Amour.

The Court found that D'Amour had "personally released the Escrow Money in contravention of the express conditions of the Escrow Agreement[.]" (Feb. 23, 2009, Mem. Op., ECF No. 617.) As a result, the Court granted summary judgment in favor of the Buyers on their conversion claim as to $500,000 of the $1,500,000 escrow payment. (Feb. 23, 2009, Order, ECF No. 618.) The remainder of the Buyers' claims against D'Amour went to the jury. The jury found that D'Amour had fraudulently failed to disclose and had engaged in fraudulent misrepresentation. (Jury Verdict, ECF No. 761.)

The jury's verdict as to fraudulent misrepresentation necessarily required a finding by the jury that: (1) D'Amour made a false representation of fact; (2) the false representation was material; (3) D'Amour intended for his representation to be relied on; (4) the Buyers acted on that representation; and (5) the representation was a proximate cause of injury to the Buyers. (Jury Instructions, ECF No. 760.) The jury's verdict on the fraudulent failure to disclose required a finding by the jury that: (1) D'Amour failed to disclose a fact; (2) the undisclosed fact was material; (3) D'Amour knew failure to disclose could justifiably induce the Buyers to act or

refrain from acting in a business transaction; (4) D'Amour had a duty to the Buyers to exercise reasonable care to disclose the fact in question; and (5) D'Amour's failure to disclose was a proximate cause of injury to the Buyers. (Jury Instructions, ECF No. 760.)

As the Third Circuit indicated, those claims were barred by the gist of the action doctrine. *Addie v. Kjaer*, 737 F.3d 854, 869 (3d Cir. 2013). At the same time, the record evidence, at the very least, provides some indicia of the conduct underlying the claim, as well as the respective parties' contribution to the initiation of this action. It is against this background that the Court will consider what costs and fees, if any, to award to D'Amour.

In *Laltoo v. Bank of Nova Scotia*, 18 V.I. 479, 484 (D.V.I. 1981), the plaintiff brought suit against the Bank of Nova Scotia (the "bank") for the bank's negligence in permitting the plaintiff's ex-wife to access the plaintiff's safety deposit box. *Laltoo v. Bank of Nova Scotia*, 18 V.I. 479, 481 (D.V.I. 1981). The plaintiff alleged that his ex-wife had accessed the safety deposit box and removed items belonging to the plaintiff. The bank added the plaintiff's ex-wife as a third-party defendant. *Id.* The plaintiff's ex-wife then filed claims against the plaintiff on the grounds that she owned some of the jewelry

in the safety deposit box. *Id.* at 482. The matter went before a jury. *Id.* The jury found that the bank was not liable to the plaintiff. *Id.* The jury also awarded the plaintiff's ex-wife $10,000 for jewelry belonging to the ex-wife which she did not take from the safety deposit box. *Id.*

Both the bank and the plaintiff's ex-wife moved for an award of attorney's fees. *Id.* at 484. As for the bank, the Court found that "[t]he evidence at trial, viewed in the light most favorable to the defendant, showed that although Mrs. Laltoo was not authorized to enter the safety deposit box under the contractual agreement between the bank and Mr. Laltoo, this action did not allege a breach of contract but was an action in tort alleging negligence by the defendant bank." *Id.* at 482. In considering the bank's motion for an award of attorney's fees and costs, the Court then concluded that "[d]espite the jury's verdict in favor of the bank, it is clear that this legal action would not have arisen but for the bank's breach of contract in permitting Mrs. Laltoo's access to Mr. Laltoo's safety deposit box. The Court, in its discretion, will therefore deny the bank's request for an award of attorney's fees and costs." *Id.* at 484. As to the plaintiff's ex-wife, the Court similarly held that "[a]lthough the jury returned a verdict in favor of Mrs. Laltoo, this does not obviate the fact that Mrs. Laltoo

attempted and succeeded in gaining access to a safety deposit box that she did not rent. The Court, in its discretion, will therefore deny Mrs. Laltoo's request for an award of attorney's fees and costs." *Id.*

*Laltoo* counsels that where a prevailing party's conduct may have contributed to the initiation of a claim, this Court, exercising its discretion, may decline to award attorney's fees and costs. *See id.*; *Figueroa v. Trans-Oceanic Ins. Co.*, 12 V.I. 140, 141-42 (D.V.I. 1975).

That result seems well within the limits of the Virgin Islands' fee shifting statute. Indeed, the United States Court of Appeal for the Third Circuit has acknowledged that "the statute makes it a matter of judicial discretion whether and to what extent the losing party shall indemnify the winner for attorney's fees. On occasion, the district court, exercising that discretion, has refused to make any award for attorneys' fees." *Smith v. Gov't of the V.I.*, 361 F.2d 469, 471 (3d Cir. 1966). The Court finds that this is one of those occasions. Although D'Amour is a prevailing party, the underlying conduct surrounding the claims against him militates against an award. Accordingly, the Court, in its discretion, declines to award attorney's fees and costs to D'Amour.

**B. Taylor**

As discussed above, pursuant to the Virgin Islands Code, the Court may, in its discretion, decline to award attorney's fees even as to prevailing parties. *Smith*, 361 F.2d 469, 471 (3d Cir. 1966). In the instant case, Taylor was a prevailing party in a meaningful sense on only one claim – unjust enrichment.[2] At the same time, Taylor, and his co-plaintiffs, failed on the vast majority of claims that they brought during the course of this litigation. Indeed, Taylor was also found to be at fault for breach of contract. Similarly, the Sellers also prevailed on some claims, and lost on others.

Where neither party is a prevailing party, or where both are, this Court in the past has exercised its discretion by declining to award attorney's fees. *See, e.g.*, *Newfound Mgmt. Corp., Gen. Partner of Newfound P'ship v. Sewer*, 34 F. Supp. 2d 305, 319 (D.V.I. 1999) ("In considering the complexity of the circumstances surrounding the litigation, . . . and the successful outcome for both parties, this Court will deny Plaintiff's request for attorney's fees and costs.")

The complexity of this matter, as well as the inextricably intertwined breaches occasioned by each party to the transaction

[2] He prevailed on the breach of contract claim, as well. However, due to the fact Taylor also breached the contract, he did not obtain the relief he sought.

at the center of the dispute, counsel against awarding any party attorney's fees and costs. Considering the balance between prevailing claims and failed claims, as well as Taylor's role in breaching the contract at issue in the litigation, the Court in its discretion declines to award costs or attorney's fees to Taylor.[3]

**C. <u>Interest</u>**

Pre-judgment interest is warranted where necessary to make the claimant whole, "because he has been denied the use of money which was his[.]" *Fotta*, 165 F.3d at 212. Here, as this Court previously stated in its August 14, 2009, Judgment, "the equities in this matter weigh heavily in favor of awarding prejudgment interest." (Judgment, ECF No. 819.) This case has gone on for nine years, during which Taylor has been unable to use $1,500,000 of his money. Though the Sellers are correct in their statement that the Court may deny pre-judgment interest where its award would be inequitable, such inequity has not been shown here.

"A court may exercise its discretion to award prejudgment interest upon considerations of fairness and prejudgment

---

[3] The Court also notes that both Taylor and the Sellers have previously agreed that the most equitable thing to do in this matter is to "simply not award fees to either side." (ECF Nos. 825 (Sellers), 868 (Taylor).)

interest may be denied when its exaction would be inequitable." *Rasmussen v. Dalmida,* 50 V.I. 1032, 1039-40 (D.V.I. 2008). To the extent that an award of prejudgment interest yields a windfall recovery, prejudgment interest would stray from its intended purpose and would be inequitable. *See id.* at 1041 n. 10.

Taylor seeks prejudgment interest at the rate of 9% per annum on his $1,500,000 recovery. By Taylor's own calculations, that would entitle him to approximately $1,286,651.35 in prejudgment interest alone. (ECF No. 931.) This amount is nearly equivalent to the judgment amount, and is a substantial sum. The Court is hard-pressed to conceive of a use to which these funds might have been put that would have generated that amount of return during the pendency of this litigation. The Court thus believes a $1,286,651.25 interest award would amount to a windfall. As such, it will reduce the interest rate to 3% per annum for the time periods during which the funds were in the possession of the Sellers.

In its August 14, 2009, Judgment, the Court provided that "prejudgment interest on Taylor's $1,500,000 . . .shall accrue . . . from September 22, 2004, until the date of this Judgment[.]" (Judgment, Aug. 14, 2009, ECF No. 819.) The funds were in the possession of the Sellers from that date, until April 26, 2010.

This Court's August 14, 2009, Judgment included an award for prejudgment interest at the statutory rate of 9% on Taylor's $1,500,000 deposit. The Court allowed the Sellers to post a bond in order to stay execution of the judgment. On April 26, 2010, the Sellers deposited $2,221,000 in the registry of the Court as bond. The Court later remitted the August 14, 2009, award to $0. Thereafter, $1,500,000 and all interest that had accrued on that principal amount while in the registry of the Court[4] was released back to the Sellers on November 7, 2011. (ECF No. 894.)

The Court is not a for-profit enterprise, nor is it in the business of generating profit for parties. As such, the Court finds that the most appropriate course is for Taylor to recover the $1,500,000 and interest accrued thereon while in the Court's registry, which sum was released to the Sellers on November 7, 2011.[5] The Court also finds that equity requires Taylor also recover prejudgment interest at the rate of 3% from November 7, 2011, through the date of the Court's April 3, 2014, Judgment, which awarded Taylor $1,500,000.

"The standard for determining whether post-judgment interest should run from the original judgment is well

---

[4] Per the Court's records, the $1,500,000 principal earned $19,650.45 in interest while in the registry of the Court.

[5] To the extent that the Court's August 14, 2009, Judgment imposed an amount of prejudgment interest that differs from the interest provided for herein, the August 14, 2009, Judgment is vacated.

established. Specifically, the decision turns on the degree to which the original judgment was upheld or invalidated on appeal." *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

> While the general standard is well formulated, its application in particular cases is often very fact specific. At one factual extreme, it is clear that if the original judgment is affirmed in whole . . . post-judgment interest will accrue from the date of the first judgment. At the other extreme are cases in which the original judgments are reversed completely. In these cases, post-judgment interest will not begin accruing until the later judgment.

*Id.* at 98. "With cases in the middle, the analysis essentially focuses on which of the two extremes the case resembles most." *Id.*

Here, the Third Circuit reversed this Court's judgment on Taylor's unjust enrichment claim. *See Addie*, 737 F.3d at 869. The Third Circuit then instructed this Court to order the return of Taylor's $1,500,000 deposit. *Id.* The Court did so on April 3, 2014. The reversal requires that "post-judgment interest . . . not begin accruing until the later judgment." *Loughman*, 6 F.3d at 98. As such, post-judgment interest began accruing on April 3, 2014.

## IV. **CONCLUSION**

The Court will decline to award fees and costs to reflect the circumstances outlined above. The Court will also award

prejudgment and post-judgment interest to the extent provided above.

The premises considered, it is hereby

**ORDERED** that D'Amours motion for costs and attorney's fees is **DENIED**; it is further

**ORDERED** that Taylor's motion for costs and attorney's fees is **DENIED**; it is further

**ORDERED** that Taylor's motion for interest on the April 3, 2014, Judgment is **GRANTED;** it is further

**ORDERED** that pre-judgment interest on $1,500,000 shall accrue at the rate of 3% per annum from September 22, 2004, through April 26, 2010, and from November 7, 2011, through April 3, 2014; it is further

**ORDERED** that $1,519,650.45, consisting of $1,500,000 of the principal and $19,650.45 in interest, as disbursed to the Sellers, shall be returned to Taylor; and it is further

**ORDERED** that post-judgment interest on $1,500,000 shall accrue at the statutory rate from April 3, 2014.

**S_______________________**
**CURTIS V. GÓMEZ**
**District Judge**